1570.35 Andrews v. Secretary of Veterans Affairs Mr. Carpenter May it please the Court, Kenneth Carpenter appearing on behalf of Mr. Edward Andrews. The Court please. We believe that this Court's February 2014 decision was clear and unambiguous in its holding. I sure didn't think I'd see you back here on this particular case, Mr. Carpenter. Well, I sure didn't either, Your Honor. I confess to not understanding the ruling below. I believe I understood the ruling here, but apparently it— The ruling below had the flavor of the Italian one of these, which luckily did not appear on the record. That was certainly my impression, Your Honor, and I'm here to answer any questions— I have yet to see you spell them before, but apparently— You succeeded. I think we've made our position perfectly clear in the briefs. I'm not sure what else it is I can say other than the fact that I believe— I was just curious. One of the things you didn't move for here, and of course all motions are always welcome, is to have this case reassigned to a different judge on remand. Do you think that might be necessary? Do you think that your client can continue to get all of the proper adjudication below if it goes back to the same judge? I just put you in an awkward position. I'm sorry. Yes, but I'm not really sure that— You could just say we're not making that motion and that's okay. Well, I'm not sure it's necessary, Your Honor. I believe that this was a complete misreading of what this court did, and it was an effort to bind a resolution other than the one that was intended by this court, and I believe if this court reaffirms its earlier decision that there isn't going to be a problem below. It's not my place, but I feel like it was the non-precedential holding that apparently suggested that there was— Just out of curiosity, can you enlighten me? Sometimes we get one-judge decisions out of the Court of Veterans' Appeals, and other times we get multi-judge decisions out of the Court of Veterans' Appeals. And in the first paragraph of this one, he concludes that this is only worthy of a one-judge decision. And yet I find it curious. It's clear from his opinion he doesn't take lightly the refusal to follow a mandate of the court. And I guess what are the standards by which the Veterans' Court decides what ought to be a one-judge versus a multi-judge decision? Because I would think the refusal, the overt, explicit refusal to follow the mandate of the appellate court— Superior court. —might be one of those grounds that is not of such mundane, common, general resolution that it might have warranted more than a one-judge resolution below. The court below, in a case called Frankel v. Derwinski, in the very early days of that court, decided what would distinguish between a single-judge decision and a panel decision. I knew you would have the answer for me, Mr. Carpenter. So what does that case say? It sets out, I believe, six different criteria that new law is being made, that the case is an issue of relative simplicity, and those are the kinds of— So is it relatively simple to acknowledge and expressly refuse to apply the mandate of the appellate court? Does that define—it doesn't define simple case in my mind. Well, no, Your Honor, but it does seem to me quite candidly that unfortunately another order from this court is going to be necessary to affirm what you did the last time and that Mr. Andrews has been placed at another lengthy delay in getting a very clear question that this court directed the board to address. And I don't know how the board could possibly address it, pursuant to this court's order, if the case was affirmed. I'm going to ask you a very strange question now, but is there any way we can resolve this case entirely right now on appeal? And the reason I ask is because what our prior decision expressly said is the record in 1983 seemed far stronger for TDIU than the record did in 91 when the government granted. The government acknowledged that at the end of their brief and did not dispute the state of the record vis-a-vis those two positions. So if I am to conclude this is a pending and unadjudicated claim that was never implicitly denied, if I were to conclude that again, then is there any reason to send this back down or isn't the state of this record undisputed such that if TDIU were warranted in 91, it's also unequivocally under the undisputed fracts of record warranted for 83? I'm not looking to make any fact findings. I would never do that as an appellate judge. But if the record is completely undisputed, if the government itself has adjudicated the worthiness of this veteran for TDIU, is there any reason to even send it back anywhere? No, Your Honor. Maybe I guess we have to send it back for accounting of some sort. Well, it would be a direction to the lower court to direct the board to instruct the secretary to make the award based upon the undisputed facts in the record and to change the current effective date from 19, I believe it's 1991, to 1983 or the date that that claim in the 1983 decision was made. And no, I do not see any reason. And I felt that that was the resolution, and I frankly was a bit blindsided below when there was requests for supplemental briefing on issues that did not seem to me to have any relevance to the disposition that was made by this court and that this court had in fact made a clear legal determination both on the record in the oral argument and in this court's decision. Mr. Andrews would be grateful to receive that, just to bring this to the end. This is the third time Mr. Andrews is before this court trying to get relief, and the error in the first case was mine. I did not properly plead it. I attempted to plead it before the court for the first time, the first iteration of this case. This court clarified that. That has been precedent in this court for more than a decade. We're now back here for the third time simply trying to get the benefit of what we thought we received when we were here last time. Thank you, Your Honor. Okay. Thank you, Mr. Carpenter. Ms. Rose. Ms. Rose, is Mr. Carpenter wrong about one fact? Isn't this actually the fourth time this case has been before us? I believe that is correct. I think it's actually the fourth time. And I think that there are more than one fact. I thought maybe it's the fourth time. All the law clerks are nodding yes. But speaking of fact, I think that there are more than one fact. Mr. Carpenter. Indeed. And there are many ways in which we're going to discuss errors that Mr. Andrews, through his counsel, may have created the confusion that brings us here today. And the appropriate starting point for today's discussion is the 2005 Q motion, which was drafted by Mr. Carpenter. It was not a pro se filing. And the reason that that's important is because this is Q. It's not a direct appeal. I thought the appropriate point of discussion would be the lower court's refusal to follow the mandate of the court. Didn't we order him to remand this case to the VA? Isn't that what the opinion was? It was quite short. I don't think I'm misremembering it. The opinion was very short. And while it did contain a remand order, it is the obligation of the Veterans Court, like every court, and of course this is a fundamental principle of jurisdiction, and this is something that the Supreme Court has addressed, for example, in Insurance Corporation of Ireland in 1982, but long before that in 1884 in the Mansfield decision, that before a court can undertake an action, it must assure itself that it has jurisdiction to do so. And here there was no jurisdiction. Again, this is a Q motion. It's a specific type of error. It's a collateral attack on a final judgment. And as such, there's a heightened pleading requirement. But the Q motion was that the agency failed to adjudicate. Isn't that correct? Failed to consider TDIU, correct. Failed to adjudicate the TDIU claim, and we ordered the agency to do exactly that. I don't understand the confusion. We ordered them to do exactly what Mr. Carpenter alleged they failed to do because we concluded they hadn't done it. So what is the confusion? The disconnect, Your Honor, is that this court didn't have the authority to make that remand order, and I'm going to explain to you why. The reason is that the role of interpreting a claim is a fact-finding determination, and this is well-established and moody. Time out. Everybody agrees the claim here was failed. The Q claim raised by Mr. Carpenter was that the agency failed to adjudicate the implicit TDIU claim, correct? That was recognized at every level, and starting with the RO, the response was it was implicitly denied, and that is entirely consistent with this court's lineup cases in Jeshotel and Adams. Okay, that's actually incorrect. This claim pended for 15 years before the first time the government alleged it was implicitly denied. This claim, this case, most of the time the government said the claim was never implicitly raised. And the court told us that we were both wrong. Don't interrupt. Don't interrupt. And that's understandable because Robertson had not been decided by that time, and the government was consistently, as it did in Roberson, arguing for a very, very, very high level of particularity to recognize any sort of claim being made by the veteran. So I'm not faulting the government, to be clear, because it was operating under a different legal standard than we clarified in Roberson at the time it made those determinations. Because if you are going to argue to me that you recognize an implicit claim pre-Roberson,  and the government explains quite clearly what it thinks must exist in the record for there to be an implicit claim that it would have any obligation to adjudicate, would you like me to turn to that and read it to you? Your Honor, I think that we're now conflating whether or not an implicitly raised claim that has been recognized by the government as such can be implicitly denied. And those are two separate principles. An implicitly raised claim puts the VA on notice of what it must adjudicate. An implicit denial provides notice to the veteran of what has been adjudicated. And as the Veterans Court in Ingram addressed, when a veteran claims... Do you not see the absurdity? If the government's position for more than a decade is, you didn't raise a claim, and thus there was no action for us to take. Just assume that was the government's position for a decade. And then they do this about-face after Roberson when we make it clear that, yes, in fact, there actually was a claim here because we make it clear what the implicit claim standard is. Now the government says, oh, boy. All right, well, maybe there was an implicit claim here, but if there was, well, back then we implicitly denied it. I mean, is that not sort of the worst kind of hindsight reconstruction of what actually occurred? It sure feels that way to me. The government must, of course, recalibrate its arguments in response to precedential orders from this court, but I want to get back to precedential orders of this court that determine the outcome of this case, and that is that the Veterans Court's decision should be affirmed. And that is that a Q motion that is written by counsel, as this one was, a very sophisticated counsel in VA benefits law, that there is no liberal construction of that claim. Every step of the way, the VA has understood Mr. Andrews' Q allegation to be limited to, and Mr. Andrews agrees with this in his brief at page 1, that the VA failed to adjudicate TDIU. And as Judge Dyke... That's right, and that's why in the last order we remanded to the Veterans Court and ordered them to remand to the VA to adjudicate exactly that claim. I don't understand the disconnect. I really don't get what you're saying. The disconnect is, as this court held in Andrews in 2005, a Q motion... Counsel cannot allege before the Veterans Court a new Q theory. If it hasn't been alleged before the RO or the board, it is waived at the Veterans Court. But you keep telling me the Q theory that Mr. Carpenter raised was they failed to adjudicate. We agreed and said, go back and adjudicate. Where is the lack of jurisdiction in that? That was the precise Q claim he raised. They failed to adjudicate this. And we agreed and said, yes, they failed to adjudicate it, go back and adjudicate it. Actually, Your Honor, I don't think that, with all due respect, you can read the 2014 decision as stating, as explicitly as you are today, those points. The first point is... It does say that. If that's how it was meant, then what is your response to that? Because I understand what you're saying. You're saying that Mr. Carpenter didn't raise a clear and unmistakable error argument with respect to adjudication, that the board didn't properly adjudicate the issue. But what we're saying to you now is the decision in 2014 found that the board did not adjudicate the issue and now needs to do so. Okay? So do you have a response to that? I do, Your Honor, and that is that that finding is a factual finding that this court is not empowered to make. Congress limited this court's ability to make factual findings. And this court has held repeatedly in Moody and others that determining what claims are raised by a Q motion and other pleadings is a factual matter. But there's no disagreement about what Q claim was raised. There's no disagreement about what Q claim was raised. What Q claim do you think was raised in the 2004 Q paper that Mr. Carpenter submitted? It's at JA30. What do you think it is? That there was a failure to consider TDIU. And this also is relevant to a case that my colleague, Mr. Hockey, argued yesterday, Evans v. McDonald. And Mr. Andrews also states this, that there's two separate Q assertions that we're talking about here. There's a Q assertion that the RO failed to consider something, and there's a Q assertion that in not awarding TDIU, the 1983 RO got it wrong and that that error was undebatable. And Q is a heightened standard that must be pled with specificity. And so the burden is on Mr. Andrews as the veteran to explain to the RO in the first instance here, because this is an RO decision that's being sought revision, how the evidence of record in 1983 undebatably established that he was entitled to TDIU. If he has an unadjudicated claim, if it was never implicitly denied, why does he have to establish that the evidence of record unequivocally entitles him to that? Why isn't he entitled to an adjudication in the first instance under the preponderance of evidence standard that typically applies? Because, Your Honor, this is not a live appeal. And the court has established that when TDIU is not awarded and no direct appeal is sought, as here, that the proper avenue is Q. And it didn't decide that the proper avenue was Q so that it could blow open Q, which is, of course, very limited to an unmistakable, clear and unmistakable error. It did so because it recognized as this court... But Q is something that has been developed by statute, right? I mean, it's a statutory section. Correct. It allows the veteran to bring to us a problem in the process below. So why can't the problem be their failure to adjudicate my claim? Because that is inconsistent with the precedent of this court, including that... I thought that's what Judge Steig's second Andrew opinion actually expressly said. If you want to challenge... Because you argued... You all argued, by the way, that this case was still arguably pending and unadjudicated and we had no jurisdiction over it for that reason. And what Judge Steig said is, no, you can go back and file a Q claim directed to justice, their failure to adjudicate. And then we would have jurisdiction over it. So he sort of acquiesced in the government's argument that we didn't have jurisdiction to decide that issue right then, but the proper vehicle... So, I mean, I have to feel a little sorry for Mr. Carpenter because it seems to me he did exactly at every stage of this process what we told him to do to properly put this issue before the court. And now your argument is that still didn't properly put the issue before the court. That's right. And the reason is that as soon as Mr. Andrews received his 2006 RO decision informing him that the TDIU claim had been implicitly denied in the 1983 decision, which is entirely consistent with this court's implicit denial precedent, including in Adams, which I believe it was Adams that explicitly, favorably, spoke of the Veterans Court's decision in Ingram that lays out very clearly why a veteran who seeks a 100% or a maximum possible benefit or believes he's raised a claim for TDIU and receives a decision less than 100% is on notice that he did not get TDIU because TDIU is, of course, a 100% rating. At that point, in 2006, when he received the RO's decision that said, you said your claim is that there was no adjudication. Our response to your cue motion is that this claim was implicitly denied. At that point, it was incumbent upon Mr. Andrews if he wanted to challenge the merits determination of the denial of his TDIU claim to file a new cue claim, a specific cue claim, because as this court has held in Andre, when we're talking about an RO's decision... Now, isn't the implicit denial rule a creature of judicial creation? I mean, it doesn't exist in a statute or in the regs by the Secretary. That's correct. So as such, wouldn't it be perfectly reasonable for us to say when the government argues, and this would be quite a narrow holding, and I'm not sure it even should be this narrow, but wouldn't it be perfectly reasonable for us to say when the government has argued for a long period of time that there was no claim and thus nothing for us to have had to take action on, that they are thereby not allowed to rely on the judicially created implicit denial rule thereafter to say, okay, okay, if it turns out we were wrong about the fact that there was a claim, well, then we implicitly denied it. Wouldn't it, at a minimum, be appropriate, since it is a creation of judicial manufacture for that limit to be placed upon that rule of judicial creation? I believe the reason it wouldn't be appropriate is because this Court's precedential holdings would preclude such an outcome. In Andre, and this is important, because collateral estoffel is a benefit to a veteran. In most cases, a civil litigant doesn't have the right to reopen a final... But which precedent? No, you said it would be contrary. The rule I just articulated would be contrary to precedent of this Court. What precedent would that rule be contrary to? It would be contrary to Roberson, because Roberson says that a TDIU claim that is not expressly adjudicated is not properly appealed as an unadjudicated claim, but is properly appealed through Q. Excuse me, is properly raised through Q. Q, of course, is not an appeal. And the reason that that's important, Your Honor, is that Q, by its very nature, assumes that there has been a final decision. So you can't challenge the VA's adjudication of something through Q unless we first start from the point, as this Court has explained, that Q is a collateral attack on a final judgment. So that assumes that there has been a judgment. And when you get to that framework, combined with the Court's holding that the failure to raise a Q theory before the board or the RO is fatal to the attempt to raise that before the Veterans Court, and that the Veterans Court, in fact, does not have jurisdiction over such claims, the only issue here is why Mr. Andrews, who is represented through very sophisticated counsel, hasn't filed the Q claim he now wants adjudicated, which is about the merits of his TDIU denial. Can I ask you the same question that I asked Mr. Carpenter near the end, which is, how, if at all possible, can we just make this case over? You can affirm, and Mr. Andrews... Okay, but that's not happening. So how, if at all possible, can we make this case over? And what I mean is, the government didn't dispute the passage in the prior decision which says the record in 83 was unequivocally stronger for this veteran of unemployability than the record in 91 the government granted. The government never explicitly, at any point, denied TDIU. And when they actually considered it for the first time in 1991, they granted it. And that record was weaker than the record they had before him in 83. So the government didn't dispute that on appeal. It actually raised it and quoted the whole thing at the end of your brief, but never disputed any of that, never once said, that's not true, there are still factual issues in play. You acquiesced in it. So can I accept that as a government's admission? Respectfully, Your Honor, you may not. The reason is that we have raised that it would be difficult, if not impossible, for... No, excuse me. Let me start over. It is an open question whether the 1983 record undebatably establishes TDIU and the proper fact-finder... I understand that's the issue you raised, and I'm not going to just kind of railroad over you on that issue. Don't worry. But suppose that I disagree with you on the undebatability standard, and I think the preponderance of the evidence standard applies because this is an unadjudicated claim. Under that standard, isn't it fair to say the government hasn't disputed that the facts in 83 were stronger than the facts in 91? I don't think that is fair, and I think in part you can look back to our 2003 pleadings, specifically footnote 3 on page 8, where we talk about evidence that existed in the record that may have contributed to the RO's consideration about whether or not employability was at issue, and that included a back condition that Mr. Andrews was a preexisting condition and he has not been awarded service connection for it. He sought service connection for it, and that was denied prior to his 1983 claim. And in addition, there is evidence in the 1983 record of alcohol and substance abuse that was not at issue in 1994, and while these documents frankly aren't relevant or material to the appeal that is on a narrow issue before us of whether or not the Veterans Court correctly held that it does not have jurisdiction to entertain a cue motion that was not raised by counsel to the board or the RO, but these factual matters are out there. There is dispute, and of course if alcohol and substance abuse is not secondary to a service-connected condition, and here there's been no finding that it is, then that cannot contribute to the basis of compensation, and that's under 38 U.S.C. 1110 and also this Court's decision in Allen. And the question about these facts, this mix of facts, that is for the VA to decide, and respectfully, Mr. Andrews has never put that merits determination at issue in a cue motion, and once he does that, that will be decided. At that point, the VA, in its proper role as the fact finder, can evaluate all of the evidence, and of course it has to be evidence that was contained in the 1983 record, and make a determination as to whether that 1983 record undebatably establishes TDIU, and I'm not saying he may not be able to do that. He may, but he needs to follow the proper vehicle as outlined by this Court in Roberson and Andre. But if you have an unadjudicated claim, why does he have to show undebatably? That's what I don't understand. If we have concluded that the claim was never adjudicated, why in the world are we raising the bar on the veteran in terms of the standard of proof he has to meet? Because a non-expressly adjudicated TDIU claim can only be raised through cue, and cue is a collateral attack of a final judgment. You cannot collaterally attack a final judgment without a final judgment. Thank you. Okay, thank you, Ms. Rose. Thank you, Your Honors. Your Honors, I believe we have just witnessed why the doctrine of law of the case is necessary. The government did not ask for a rehearing of the 2008 record of the 2014 decision. It didn't ask for reconsideration of the determination that was made by this Court. We've just spent 20 minutes relitigating the issue, and part of the problem here is that the government, since this Court issued the Roberson decision, has done everything possible to create impediments to the implementation of that decision. And this panel, I urge to write a precedential opinion that clarifies the holding in Roberson. As I understand the holding in Roberson, as I believe Judge Moore articulated to the government, the holding in Roberson is that if there is a pending claim and there is found to be a pending claim, then the veteran is entitled to have that pending claim adjudicated. The VA, and this case is a perfect example of it, has used the implicit denial rule to undermine their holding in Roberson, to use the implicit denial rule as a device because they read, I believe very narrowly, the decision in Roberson to mean that only can you pursue the theory in Roberson based upon an allegation of clear and unmistakable error, and therefore the burden is higher. I do not believe that that is the intent of Roberson. In the case that was referred to by the government that was argued yesterday in Evans, the government put forth an argument that this Court somehow overruled Roberson in Cook. I do not believe that this Court, when it went in Bonk, overruled this Court's decision in Roberson, and mayhaps this Court needs to go in Bonk to clarify the difference between the holding in Roberson and the difference in the holding in Hare, which is what, in fact, was overruled in Cook. I urge this Court to give Mr. Andrews resolution.  I'm hoping that if the government were to lose on all of the legal points that it might acquiesce in the factual one, but we can't decide facts in the first instance. And if she's going to stand up here and dispute what the record in 83 would have established or not, how can we do that? If I say it's an unadjudicated claim, I don't get to adjudicate it in the first instance. Of course you don't, Your Honor. But that then reinstates this Court's order from 2014, which directs the Veterans Court to direct the Board to adjudicate that pending claim. I'm sorry. I thought you were saying you want us to give him resolution. I thought you meant... No, no. Because I was kind of hoping the government might sort of acquiesce in the facts, since the facts of record are just so clear, and that might... We could maybe say it's undisputed, that sort of thing. But it doesn't seem that they're willing to do that. Well, in more than a decade... So the most you seem to be able to get here, if you get anything at all, is to go back and have the VA adjudicate it. Yes, Your Honor, because I believe that's what we're entitled to under Roberson. But as I think the argument here today has demonstrated, there is a clear misunderstanding on the part of the government, and to this extent on the part of Judge Cassell and the lower court, as to the meaning of this Court's decision in Roberson. And that is, what benefit is derived the veteran who is, in fact, able to demonstrate that the issue was presented and not adjudicated? It was reasonably raised, either by the veteran or by a liberal reading of the evidence, and that determination was made, I believe, as a matter of law, that Mr. Roberson raise the issue. That legal determination was resolved by this Court last time. What this Court needs to do this time is to clarify the difference between the holding in Roberson and the judicially created holding of implicit denial. Unless there's further questions from the Court, I appreciate your attention. Thank you. Thank you, Mr. Carpenter. Thank you, Ms. Rose. The case is taken under submission. That concludes the argued cases for this morning. All rise. Thank you.